3:26-mj-00072

**DISTRICT OF OREGON, ss:**                    **AFFIDAVIT OF PETER READ**

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Peter Read, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Task Force Officer (TFO) for the Federal Bureau of Investigation and have a special deputation to investigate and enforce Titles 18 and Title 21 of the United States Code.  I am a Detective employed by the Multnomah County Sheriff's Office (MCSO), assigned as a criminal investigator to the Special Investigations Unit (SIU) investigating narcotics-related crimes.  I am a sworn police officer and have been for more than 26 years.

2.      During my career as a police officer, I have become familiar with criminal investigations and the collection of evidence to support those criminal investigations.  In more than 26 years as a sworn law enforcement officer, I have investigated hundreds of criminal incidents. Those criminal incidents include, but are not limited to: DUII's, assaults, thefts, criminal mischiefs, robberies, burglaries, forgeries, identity thefts, weapons offenses, narcotics offenses, sex offenses and fugitive apprehension. I am familiar with criminal investigations and the collection of evidence, which support those criminal investigations and have personally conducted at least 100 drug investigations resulting in warrants being issued, commercial quantities of drugs seized and felony arrests.

3.      I submit this affidavit in support of a criminal complaint and arrest warrants for David Julian Hansen (**HANSEN**) DOB XX/XX/1980 for committing the offense of: Possession with Intent to Distribute 500 grams or more of a Mixture and Substance containing Cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II)

**Affidavit of Peter Read**                                    **Page 1**

(hereinafter the Target Offense).  As set forth below, there is probable cause to believe, and I do believe, that **HANSEN** committed the Target Offenses.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, information from a confidential source, an interview of **HANSEN**, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

5.      21 U.S.C. § 841(a)(1) makes it unlawful for any person to knowingly or intentionally possess with intent to distribute or distribute a controlled substance.  21 U.S.C. § 841(b)(1)(B)(ii)(II) provides the penalties in a case of a violation involving 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

## Statement of Probable Cause

6.      The Federal Bureau of Investigation (FBI), Multnomah County Sheriff's Office (MCSO), and the Los Angeles Drug Enforcement Administration (DEA) (hereinafter referred to collectively as "Investigators") are investigating a drug trafficking organization (DTO) trafficking cocaine from Los Angeles, California to the Portland Metropolitan area.  Investigators

///

**Affidavit of Peter Read**                                                                          **Page 2**

believe **HANSEN** and others, both known and unknown to Investigators, are participants in the DTO.

7.      This investigation is being conducted with the use of a Confidential Source (hereinafter referred to as the (CS)) working in the Los Angeles area.

8.      In connection with this case Irvine Police Detective and DEA TFO Alan Patrick applied for, and received the following warrant: vehicle tracker, signed by the Honorable Deirdre Hill, Judge of the Los Angeles Superior Court on March 9, 2026.

9.      Based on information from the vehicle tracker, on March 9, 2026, Detective Patrick advised me that **HANSEN** was driving a white Chevrolet Silverado bearing Oregon license plate number 251QCY**,** (hereinafter "Subject Vehicle").

10.      On March 21, 2026, Detective Patrick contacted me and advised me that **HANSEN** had contacted their CS and told the CS that he was going to Los Angeles to pick up cocaine

11.      On March 23, 2026, Detective Patrick advised me that **HANSEN** told the CS he was on his way to Los Angeles.

12.      On March 26, 2026, Detective Patrick contacted me and advised me that the CS was contacted by HANSEN and was told by the CS that **HANSEN** had picked up the cocaine.

13.      Later that day, Detective Patrick advised me that **HANSEN** was leaving the Los Angeles area heading northbound towards Portland, Oregon.  Detective Patrick advised me that he would monitor the tracker on the Subject Vehicle until it crossed the Oregon-California border so that he could advised me what route **HANSEN** would be taking.  When the Subject Vehicle reached Weed, California, Detective Patrick advised me that the Subject Vehicle was taking I-5

**Affidavit of Peter Read**                                                                                                    **Page 3**

north towards Portland.  I received no further tracker updates from Detective Patrick after the Subject Vehicle left Weed.

14. Investigators began driving south on I-5 to locate the Subject Vehicle.  Near the city of Crestwell, Oregon, Seargent Chad Phifer located the Subject Vehicle by make, model, and drivers license travelling northbound on I-5 and began to follow it.  Other Investigators joined in the follow.

15. While following the Subject Vehicle, I contacted Oregon State Trooper Andrew Tuttle and advised him that we were pursuing a vehicle that we believed was trafficking narcotics from Los Angeles to the Portland area.  Trooper Tuttle advised me that he would assist Investigators by following the vehicle to determine if he whether he had probable cause to make a traffic stop.

16. Near I-5 mile post 273, Trooper Tuttle observed the Subject Vehicle's front-passenger windows appeared to be a darker tint than is allowed under Oregon law.  He also observed the Subject Vehicle traveling 69 miles an hour—above the 65 mile-per-hour speed limit.  Following these observations, Trooper Tuttle initiated a stop of the Subject Vehicle. Trooper Tuttle was in uniform, displaying his badge, and operating a marked Oregon State Police patrol vehicle.

17. **HANSEN** was the sole occupant of the vehicle.  Trooper Tuttle identified himself to **HANSEN**, explained that he was recording the contact, and explained that **HANSEN** had been stopped for speeding and suspected illegal window tint.  Trooper Tuttle measured the light transmission of the front passenger window using a tint meter, which indicated that the window tint was darker than is permitted under Oregon law.

**Affidavit of Peter Read**                                                                          **Page 4**

18.    Investigators arrived at the scene and interviewed **HANSEN** after Trooper Tuttle had **HANSEN** exit his vehicle and patted him down for weapons.  Trooper Tuttle walked **HANSEN** back to Trooper Tuttle's patrol vehicle.  Once **HANSEN** was there, I introduced myself to **HANSEN** and advised him of his Miranda warning.  When I asked if he understood his rights, **HANSEN** stated that he did.

19.    I asked **HANSEN** if there were any drugs in the Subject Vehicle.  **HANSEN** told me that he had a quarter ounce of marijuana in his duffle bag.  I asked **HANSEN** for consent to search the Subject Vehicle.  **HANSEN** agreed to this.  I then provided **HANSEN** with an FBI consent form for the Subject Vehicle, which he read and then signed.

20.    Just prior to searching the Subject Vehicle I again asked **HANSEN** if there were any other drugs in the subject.  **HANSEN** admitted to me that there was a kilogram of cocaine in the center console between the driver seat and the passenger seat.  In that location Investigators located a one-kilogram brick of suspected cocaine as well as $5330 dollars.

21.    I asked **HANSEN** how much he paid for the kilogram of cocaine.  He told me approximately $15,000.  When I asked him where and from whom he received the cocaine from in Los Angeles, **HANSEN** didn't answer.  When I pressed him on the subject **HANSEN** advised me he wanted to speak to an attorney.  I asked no further questions of **HANSEN**.

22.    Investigators field tested the suspected cocaine at the scene using a Mobile Detect kit.  The substance field tested positive as cocaine, a schedule II-controlled substance.  The suspected cocaine was later placed into evidence at the Multnomah County Sheriff's Office.

23.    I know, based upon my training and experience, that cocaine is an addictive Schedule II controlled substance usually seen as a white compressed powder and sold in amounts ranging from a gram to multi-kilograms.  I know users of cocaine will generally purchase and

**Affidavit of Peter Read**                                              **Page 5**

possess an eighth of an ounce or less at a time.  Possessing an ounce or more of cocaine at a time is a strong indicator of drug possession for further distribution.

**<u>Use of Confidential Source</u>**

24.    This investigation is being conducted with the use of Confidential Source (hereinafter referred to as the CS).  Detective Patrick told me the CS was familiar with controlled substances because the CS has been involved in the drug culture and has witnessed the use, sale, and/or manufacture of various drugs on over 1,000 occasions.  The CS has demonstrated that they are completely familiar with the common appearance of most illicit drugs, including methamphetamine, cocaine, fentanyl, and heroin.  I reviewed the CS's Computer Criminal History (CCH) and noted that there were no convictions for crimes of dishonesty.  The CS has one or more felony convictions for the following categories of crimes: Infliction of Corporal Injury on Spouse/Cohabitant, Threat of Crime with Intent to Terrorize, Assault with a Deadly Weapon,

25.    Detective Patrick told me the CS to be reliable because the CRI has provided him with information regarding users and sellers of controlled substances in this investigation, which he knows from prior experience as a narcotics officer to be true, but which the CS could not know that Detective Patrick knew.  Detective Patrick told me investigative information received from the CS has been accurate upon verification by law enforcement officers.  I have reviewed CS's criminal history and found that CS has no convictions for crimes of dishonesty.  The CS is cooperating with law enforcement in hopes of receiving consideration on pending charges; no promises have been made.  The CS disclosed to law enforcement that the CRI has used controlled substances in the recent past.

**Affidavit of Peter Read**                                                                    **Page 6**

26.     Based on the investigation to date, I believe the CS's information has been sufficiently corroborated and is truthful and accurate. Based on my training and experience, I know that drug traffickers use violence, threats, and intimidation against confidential informants and cooperating witnesses. Accordingly, to help protect the CS, I am purposefully limiting details that may help identify him/her.

## Conclusion

27.     Based on the foregoing, I have probable cause to believe, and I do believe, that David Julian Hansen (**HANSEN**) committed the offenses of: Possession with Intent to Distribute 500 grams or more of a Mixture and Substance containing cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II) (the Target Offense) and I therefore request that the Court issue a criminal complaint and arrest warrant for **HANSEN** for committing the Target Offense.

///

///

///

**Affidavit of Peter Read**                                                                 **Page 7**

28.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) James Kilcup, and AUSA Kilcup advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Peter Read, Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___8:56 am___ on March 27, 2026.

_____
HONORABLE YOULEE YIM YOU
UNITED STATES MAGISTRATE JUDGE

**Affidavit of Peter Read**                                                                 **Page 8**